Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@houmandlaw.com
HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Counsel for Bradley G. Sims, Chapter 7 Trustee*

*Electronically Filed On: September 19, 2025*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: <br><br> GREGORY E. CRAWFORD & TORREY CRAWFORD, <br><br> Debtors. | Case No. BK-S-25-50104-HLB <br> Chapter 7 |
| BRADLEY G. SIMS, Chapter 7 Trustee, <br><br> Plaintiff, <br> v. <br><br> JOUKO SIPILA, an individual; ADAM HOPPE, an individual; CRAWFORD TRUST COMPANY, LLC, a Nevada limited liability company; GREGORY E. CRAWFORD, an individual; TORREY CRAWFORD, an individual; ALLIANCE TRUST COMPANY, LLC, a Nevada limited liability company; DENIS DAMIENS, JR., an individual; LOUIS ROBINSON, an individual; DOE Individuals 1-10; and ROE corporations 1-10, <br><br> Defendants. | Adv. Proc. No. _____ <br><br> **COMPLAINT FOR: (1) AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b) AND NRS CHAPTER 112; (2) AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548; (3) RECOVERY OF BANKRUPTCY ESTATE PROPERTY PURSUANT TO 11 US.C. § 550; (4) CHARGING ORDER AGAINST CRAWFORD TRUST COMPANY, LLC PURSUANT TO 11 U.S.C. § 544(a)(1); (5) ACCOUNTING; AND (6) DECLARATORY RELIEF** <br><br> Judge: Honorable Hilary L. Barnes |

Bradley G. Sims (alternatively, the "Plaintiff" or "Trustee"), the duly appointed Chapter 7 Trustee in the above-captioned bankruptcy case, by and through his counsel of record, Jacob L. Houmand, Esq. of the Houmand Law Firm, Ltd., complains and alleges the following on information and belief against Jouko Sipila ("Sipila") and Adam Hoppe ("Hoppe"), Crawford Trust Company, LLC ("CTC"), Gregory E. Crawford ("G. Crawford"), Torrey Crawford ("T.

-1-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

Crawford" and together with G. Crawford, the "Debtors"), Alliance Trust Company, LLC ("Alliance"), Denis Damiens, Jr. ("Damiens"), and Louis Robinson ("Robinson")[1]:

## I. JURISDICTIONAL ALLEGATIONS

1. This is an adversary proceeding within the meaning of Federal Rule of Bankruptcy Procedure 7001.[2]

2. This adversary proceeding arises out of and is related to the above-captioned Chapter 7 case before the United States Bankruptcy Court (the "Bankruptcy Case"). This Court has jurisdiction in the instant adversary proceeding pursuant to 28 U.S.C § 1334 and because the issues raised in the action arise under Sections 544, 548, and 550 of the Bankruptcy Code and relate to the Bankruptcy Case.

3. Venue is proper under 28 U.S.C. § 1409.

4. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F) and (O). If this adversary proceeding is determined to be "noncore," Plaintiff consents to the entry of final orders or judgments by the bankruptcy judge.

## II. PARTIES

5. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 4 of the Complaint as though full set forth herein.

6. On February 7, 2025, Plaintiff was appointed as the Chapter 7 Trustee in the Debtors' bankruptcy case and has served in that capacity since his appointment.

7. Upon information and belief, Sipila is an individual residing in Washoe County, Nevada.

. . .

---

[1] Sipila, Hoppe, CTC, the Debtors, Alliance, Damiens, and Robinson shall collectively be referred to as the "Defendants".

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP." The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules".

8. Upon information and belief, Hoppe is an individual residing in Washoe County, Nevada.

9. Upon information and belief, CTC is a limited liability company organized under the laws of the state of Nevada.

10. Upon information and belief, G. Crawford is an individual residing in Washoe County, Nevada.

11. Upon information and belief, T. Crawford is an individual residing in Washoe County, Nevada.

12. Upon information and belief, Alliance is a limited liability company organized under the laws of the state of Nevada.

13. Upon information and belief, Damiens is an individual residing in Washoe County, Nevada.

14. Upon information and belief, Robinson is an individual residing in Washoe County, Nevada.

15. The true names, identities, or capacities, whether individual, corporate, political, associate or otherwise of any Doe and Roe Defendants are unknown to Plaintiff. Plaintiff therefore sues and Doe and Roe Defendants by fictitious names. Plaintiff is informed and does believe, and thereupon alleges, that: each of the Doe and Roe Defendants is responsible in some manner for the acts, actions and omissions herein referred to; each of the Doe and Roe Defendants has proximately caused general and special damages to Plaintiff as herein alleged; and Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of any said Doe and Roe Defendants when the same have been ascertained by Plaintiff, together with appropriate charging allegations.

III. **GENERAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

THE ARBITRATION PROCEEDING

16. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 15 of the Complaint as though fully set forth herein.

. . .

-3-

17. On or about December 5, 2022, after more than two years of discovery, Alliance, Robinson, and Damiens (collectively, the "Alliance Parties") and G. Crawford commenced a two-week arbitration hearing in Reno, Nevada before retired Nevada Supreme Court Justice Nancy A. Becker (the "Arbitrator"). The arbitration hearing concluded on December 16, 2022.

18. On March 14, 2023, the Arbitrator rendered her oral ruling (the "Oral Ruling") in favor of the Alliance Parties and against G. Crawford.

19. Upon information and belief, in the Oral Ruling, the Arbitrator awarded damages of several million dollars against G. Crawford, which included punitive damages, and awarded Alliance permanent injunctive relief.

**THE DEBTORS TRANSFER AND ENCUMBER THE MAJORITY OF THEIR NONEXEMPT ASSETS**

20. Upon information and belief, after the Arbitrator announced the Oral Ruling, the Debtors began the process of transferring and encumbering their non-exempt assets to hinder and delay the collection efforts of the Alliance Parties.

21. Upon information and belief, in or about April 2023, the Debtors consulted with a bankruptcy attorney.

22. Upon information and belief, G. Crawford testified at his 341(a) Meeting of Creditors that he was contemplating filing for bankruptcy as early as April 2023.

23. Upon information and belief, on or about May 22, 2023, the Debtors and K7 Construction, Inc. ("K7") formed Cardinal Lion, LLC ("Cardinal Lion") by filing articles of organization with the Nevada Secretary of State.

24. Upon information and belief, the Debtors and K7 each own a fifty percent (50%) membership interest in Cardinal Lion.

25. Upon information and belief, the sole owner of K7 is David Knaub ("Knaub") who is a close personal friend of the Debtors.

26. On or about May 24, 2023, the Debtors transferred their interest in the real property located at 600 Rose Peak Drive, Reno, Nevada 89511 [APN 152-340-12] (the "Rose Peak Property") to Cardinal Lion for no consideration.

. . .

-4-

27. Upon information and belief, prior to May 24, 2023, title to the Rose Peak Property was held in the name of the Debtors' revocable trust and was unencumbered. The estimated fair market value of the Rose Peak Property is approximately $400,000.00.

28. Upon information and belief, the operating agreement for Cardinal Lion provides that the initial contribution of K7 Construction was $25,000, and the Debtors' initial contribution was the Rose Peak Property.

29. On August 22, 2023, FATCO, LLC ("FATCO") was formed when articles of organization were filed with the Nevada Secretary of State.

30. Upon information and belief, the members of FATCO are either close friends or relatives of the Debtors.

31. Upon information and belief, the Debtors' parents hold a forty-seven percent (47%) membership interest in FATCO.

32. Upon information and belief, Knaub holds a twenty-two percent (22%) membership interest in FATCO.

33. On or about September 22, 2023, FATCO recorded a *Deed of Trust With Assignment of Rents* (the "FATCO DoT") against the real property located 3639 Silver Vista Drive, Reno, Nevada 89511 [APN 152-351-01] (the "Silver Vista Property") that secured a loan in the principal amount of $900,000.000 (the "FATCO Loan").

34. Upon information and belief, the Silver Vista Property is the Debtors' principal residence.

35. Upon information and belief, the recording of the FATCO Loan encumbered all of the non-exempt equity that the Debtors held in the Silver Vista Property after accounting for their homestead exemption under Nevada law and a deed of trust in favor of Wells Fargo Bank, N.A.

36. Upon information and belief, the Debtors also signed a pledge agreement with FATCO that purported to also secured the FATCO Loan against their membership interest in Cardinal Lion.

37. On the date that the arbitrator the Oral Ruling, G. Crawford held a one hundred percent (100%) membership interest in the Crawford Trust Company, LLC ("CTC").

-5-

38. In or about August 2023, G. Crawford transferred a fifteen percent (15%) membership interest in CTC to Sipila for $150,000.00 in cash (the "Sipila Transfer").

39. Upon information and belief, the $150,000.00 payment from Sipila for the purchase of this membership interest was paid directly to CTC even though G. Crawford sold his membership interest to Sipila.

40. Upon information and belief, Sipila made the $150,000.00 payment directly to CTC even though G. Crawford sold his membership interest to Hoppe to prevent the Debtors from receiving any payments that could be attached by the Alliance Parties.

41. In or about August 2023, G. Crawford transferred a fifteen percent (15%) membership interest in CTC to Hoppe (the "Hoppe Transfer" and together with the Sipila Transfer, the "Transfers") for $50,000.00 in cash and a promissory note (the "Hoppe Promissory Note") in the amount of $100,000.00 payable to CTC.

42. Upon information and belief, Hoppe made the $50,000.00 cash payment and monthly payments under the Hoppe Promissory Note directly to CTC even though G. Crawford sold his membership interest to Hoppe.

43. Upon information and belief, the $50,000.00 cash payment from Hoppe was made directly to CTC to prevent the Debtors from receiving any payments that could be attached by the Alliance Parties.

44. Upon information and belief, the Hoppe Promissory Note required payments to be paid to CTC to prevent the Debtors from receiving any payments that could be attached by the Alliance Parties.

45. Upon information and belief, the Debtors did not obtain a business appraisal to determine a fair market value for CTC before finalizing the Transfers.

46. Upon information and belief, the Debtors' sale of the thirty-percent (30%) membership interest in CTC to Hoppe and Sipila implied a business valuation of approximately $1,000,000.00 for CTC.

47. Upon information and belief, CTC had cash on deposit in financial institutions in excess of $1,000,000.00 on the date the Transfers were finalized.

-6-

48. Upon information and belief, G. Crawford made the Transfers to prevent his bankruptcy estate from holding a one hundred percent (100%) membership interest in CTC, which would have allowed a bankruptcy trustee to liquidate the assets of CTC. *See In re B&M Land & Livestock, LLC*, 498 B.R. 262 (Bankr. D. Nev. 2013) (holding that where a debtor has a membership interest in an ordinary single-member limited liability company and files a bankruptcy petition under chapter 7, the bankruptcy trustee's rights automatically include the right to manage the limited liability company, without the need to take further specific actions to comply with state law).

**THE DECISION OF THE ARBITRATOR IS CONFIRMED BY THE NEVADA STATE COURT**

49. Upon information and belief, although the Arbitrator issued the Oral Ruling on March 14, 2023, the Arbitrator did not enter her Findings of Fact, Conclusions of Law and Award until November 8, 2023.

50. Upon information and belief, the Arbitrator awarded damages in favor of Robinson and against G. Crawford in the amount of $36,159.39.

51. Upon information and belief, the Arbitrator awarded damages in favor of Alliance and against G. Crawford in the amount of $4,890,168.74.

52. Upon information and belief, the Arbitrator found in favor of Robinson and Damiens on their declaratory relief claims.

53. Upon information and belief, the Arbitrator awarded the Alliance Parties attorneys' fees and costs in the amount of $3,090,345.10.

54. Upon information and belief, the Arbitration award in favor of the Alliance Parties and against G. Crawford was in excess of $8,000,000.00.

55. On November 30, 2023, the Alliance Parties filed a *Motion to Confirm the Arbitrator's Award, Permanent Injunction and Award of Attorneys' Fees and Costs* in the Second Judicial District Court of the State of Nevada in and for the County of Washoe and commenced the litigation captioned *Robinson v. Gregory E. Crawford et al.* (Case Number CV20-00893) (the "State Court Litigation").

. . .

56. On December 12, 2024, the Judgment was entered against G. Crawford in the State Court Litigation.

**THE DEBTORS' BANKRUPTCY FILING**

57. On February 7, 2025 (the "Petition Date"), the Debtors filed a voluntary bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code [ECF No. 1].[3]

58. The Debtors' Schedule A/B [ECF No. 1] provide that they own the following interests in limited liability companies: (a) a seventy percent (70%) ownership interest in CTC; (b) a fifty-eight percent (58%) ownership interest in Sierra Nevada Wealth Management, LLC ("SNWM"); and a fifty percent (50%) ownership interest in Cardinal Lion.

59. The Debtors did not claim an exemption in their ownership interests held in CTC, SNWM, or Cardinal Lion.

60. On February 7, 2025, Plaintiff was appointed as the Chapter 7 Trustee in the Debtor's bankruptcy case.

61. Upon information and belief, the Debtor was insolvent on the date that the Transfers were made or was rendered insolvent as a result of the Transfers.

62. Upon information and belief, at all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtor (each as a "Predicate Creditor").

**Creditor(s) of the Debtor:**

| Creditor | Scheduled as Undisputed by Debtor | Proof of Claim No. | Amount |
|---|---|---|---|
| Internal Revenue Service | N/A | 1-1 | $117,643.60 |
| American Express National Bank | Yes | 4-1 | $23,406.89 |

. . .

. . .

. . .

---

[3] All references to "ECF No." are to the numbers assigned to the documents filed in the Debtors' main bankruptcy case as they appear on the docket maintained by the clerk of the court.

-8-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

## IV. FIRST CLAIM FOR RELIEF

**(Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. 544(b) and NRS Chapter 112 Against Hoppe and Sipila)**

63. Plaintiff incorporates and realleges paragraphs 1 through 62, as though fully set forth herein.

64. The Transfers constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

65. At the time of the filing of the Debtor's bankruptcy petition, the Predicate Creditors each held an allowable unsecured claim under 11 U.S.C. § 502.

66. The Transfers constitute transfers of property by the Debtors or obligations incurred by the Debtors that are voidable by that kind of creditor described in 11 U.S.C. § 544 (a)(1); that kind of creditor described in 11 U.S.C. § 544 (a)(2); or that bona fide purchaser described in 11 U.S.C. § 544 (a)(3).

67. The Debtors made the Transfers with the actual intent to hinder, delay, or defraud their creditors.

68. Upon information and belief, the Debtors transferred a thirty percent (30%) ownership interest in CTC to Hoppe and Sipila to prevent their bankruptcy estate from holding a one hundred percent (100%) ownership interest in CTC, which would have allowed a bankruptcy estate to liquidate the company's assets without further court order.

69. The Transfers were made after the Debtors consulted with a bankruptcy attorney and the arbitrator had rendered her Oral Ruling.

70. The Transfers had the effect of depriving the Debtors' bankruptcy estate of the benefit of liquidating the assets of the CTC, which constitute the majority of the Debtors' non-exempt assets.

71. The Oral Ruling made it evident that a significant judgment would be entered against the Debtors.

72. The Debtors retained the majority of the membership interest in CTC after the Transfers were made to Hoppe and Sipila.

. . .

-9-

73. Upon information and belief, the Debtors continue to receive distributions from CTC based upon their seventy percent (70%) ownership interest in the company.

74. Upon information and belief, Hoppe and Sipila were long-time employees and close personal friends of G. Crawford prior to the Transfers.

75. Upon information and belief, Hoppe and Sipila were aware of the Oral Ruling at the time of the Transfers and that a significant judgment would be entered against the Debtors.

76. Upon information and belief, all payments from Hoppe and Sipila to purchase their respective membership interests in CTC were made directly to CTC even though they were sold by the Debtors.

77. Upon information and belief, Hoppe and Sipila did not make any payments directly to the Debtors to prevent the Debtors from receiving any payments that could be attached by the Alliance Parties.

78. Under applicable Nevada Law, the Transfers constitute the transfer of interests of the Debtors in property, or an obligation incurred by the Debtors, during the relevant statutory period, and the Debtors made the Transfers without receiving a reasonably equivalent value in exchange for the Transfers and the Debtor was insolvent at that time of the Transfers or the Debtor became insolvent as a result of the Transfers.

79. Upon information and belief, the Debtors did not obtain a business appraisal prior to agreeing to the purchase price for the thirty-percent (30%) membership interest sold by the Debtors to Hoppe and Sipila.

80. Upon information and belief, the Debtors' sale of the thirty-percent (30%) membership interest in CTC to Hoppe and Sipila implied a business valuation of approximately $1,000,000.00 for CTC.

81. Upon information and belief, CTC had cash on deposit in financial institutions in excess of $1,000,000.00 on the date the Transfers were finalized.

82. Plaintiff is entitled to avoid and recover for the bankruptcy estate the Transfers as would a hypothetical lien creditor pursuant to the bankruptcy code.

. . .

-10-

83. The Transfers are avoidable and can be recovered by Plaintiff pursuant to 11 U.S.C. § 544(b) and N.R.S. Chapter 112.

84. It has been necessary for Plaintiff to retain counsel to bring this action and Plaintiff is entitled to legal fees and costs.

85. Plaintiff reserves the right to supplement this Complaint to plead additional claims for relief.

V. **SECOND CLAIM FOR RELIEF**

**(Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. § 548 Against Hoppe and Sipila)**

86. Plaintiff incorporates and realleges paragraphs 1 through 85, as though fully set forth herein.

87. The Transfers constitute transfers within the meaning of 11 U.S.C. § 101(54).

88. The Debtors made the Transfers with the actual intent to hinder, delay, or defraud their creditors.

89. Upon information and belief, the Debtors transferred a thirty percent (30%) ownership interest in CTC to Hoppe and Sipila to prevent their bankruptcy estate from holding a one hundred percent (100%) ownership interest in CTC, which would have allowed a bankruptcy estate to liquidate the company's assets without further court order.

90. The Transfers were made after the Debtors consulted with a bankruptcy attorney and the arbitrator had rendered her Oral Ruling.

91. The Transfers had the effect of depriving the Debtors' bankruptcy estate of the benefit of liquidating the assets of the CTC, which constitute the majority of the Debtors' non-exempt assets.

92. The Oral Ruling made it evident that a significant judgment would be entered against the Debtors.

93. The Debtors retained the majority of the membership interest in CTC after the Transfers were made to Hoppe and Sipila.

94. Upon information and belief, the Debtors continue to receive distributions from CTC based upon their seventy percent (70%) ownership interest in the company.

-11-

95. Upon information and belief, Hoppe and Sipila were long-time employees and close personal friends of G. Crawford prior to the Transfers.

96. Upon information and belief, Hoppe and Sipila were aware of the Oral Ruling at the time of the Transfers and that a significant judgment would be entered against the Debtors.

97. Upon information and belief, all payments from Hoppe and Sipila to purchase their respective membership interests in CTC were made directly to CTC even though they were sold by the Debtors.

98. Upon information and belief, Hoppe and Sipila did not make any payments directly to the Debtors to prevent the Debtors from receiving any payments that could be attached by the Alliance Parties.

99. The Debtors received less than a reasonably equivalent value in exchange for the Transfers because Debtor was not obligated to make the Transfers or otherwise received no benefit or less than a reasonably equivalent value from Defendant in exchange for the Transfers.

100. Upon information and belief, the Debtors did not obtain a business appraisal prior to agreeing to the purchase price for the thirty-percent (30%) membership interest sold by the Debtors to Hoppe and Sipila.

101. Upon information and belief, the Debtors' sale of the thirty-percent (30%) membership interest in CTC to Hoppe and Sipila implied a business valuation of approximately $1,000,000.00 for CTC.

102. Upon information and belief, CTC had cash on deposit in financial institutions in excess of $1,000,000.00 on the date the Transfers were finalized.

103. The Debtor was insolvent on the date that the Transfers were made or became insolvent as a result of the Transfers.

104. The Transfers was made within two (2) years of the Petition Date.

105. It has been necessary for Plaintiff to retain counsel to bring this action and Plaintiff is entitled to legal fees and costs.

106. Plaintiff reserves the right to supplement this Complaint to plead additional claims for relief.

### VI. THIRD CLAIM FOR RELIEF

**(Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. § 550 Against Hoppe and Sipila)**

107. Plaintiff incorporates and realleges paragraphs 1 through 106, as though fully set forth herein.

108. The Transfers are avoidable transfers pursuant to 11 U.S.C. § 544(b) and 11 U.S.C. § 548.

109. Pursuant to 11 U.S.C. § 550(a), to the extent that a transfer is avoided under Section 544 of the Bankruptcy Code, Plaintiff is entitled to recover for the benefit of the estate the property transferred, or the value of the property transferred from the initial transferee of such transfers, or the entity for whose benefit the transfer was made.

110. Hoppe and Sipila were the initial transferee of the Transfers, or in the alternative, Defendant was either the entity for whose benefit the Transfers were made or was the immediate or mediate transferee of the initial transferee receiving the Transfers.

111. To the extent it is determine that Hoppe and Sipila are an immediate or mediate transferee of the Transfers, Hoppe and Sipila did not take for value, in good faith, or without knowledge of the voidability of the Transfers.

112. The Plaintiff is entitled to a judgment under 11 U.S.C. § 550(a), recovering the Transfers, or the value thereof, for the benefit of the Debtor's bankruptcy estate.

113. It has been necessary for Plaintiff to retain counsel to bring this action and Plaintiff is entitled to legal fees and costs.

114. Plaintiff reserves the right to supplement this Complaint to plead additional transfers and claims for relief.

### VII. FOURTH CLAIM FOR RELIEF

**(Charging Order Against Debtors' Membership Interest in CTC Pursuant to 11 U.S.C. § 544(a)(1) and N.R.S. § 86.401 Against CTC and the Debtors)**

115. Plaintiff incorporates and realleges paragraphs 1 through 114, as though fully set forth herein.

116. 11 U.S.C. § 544(a)(1) provides:

-13-

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
>
> > (1) A creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

117. 11 U.S.C. § 544(a)(1) empowers Plaintiff the same rights as a creditor with a judgment against the Debtors, and Plaintiff may invoke whatever remedies are provided by state law to judgment lien creditors to satisfy judgments against the Debtors.

118. N.R.S. § 86.401(a) provides creditors with the right to request a charging order against a judgment debtor's interest in a limited liability company: "[o]n application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the member's interest with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the member's interest."

119. As of the date of the filing of this complaint, the total amount of claims that have been filed in the Debtors' bankruptcy case is $13,502,077.66.

120. Plaintiff, as a judicial lien creditor, is entitled to a charging order against the Debtors' seventy percent (70%) membership interest in CTC in the amount of $13,502,077.66.

121. It has been necessary for Plaintiff to retain counsel to bring this action and Plaintiff is entitled to legal fees and costs.

122. Plaintiff reserves the right to supplement this Complaint to plead additional transfers and claims for relief.

### VIII.   FIFTH CLAIM FOR RELIEF

**(Accounting Against CTC, Hoppe, and Sipila)**

123. Plaintiff incorporates and realleges paragraphs 1 through 122, as though fully set forth herein.

-14-

124. CTC, Hoppe, and Sipila are in the possession of information, records, and/or property belonging to the bankruptcy estate related to: (a) distributions made to the Debtor; (b) payments made to third-parties on behalf of personal expenses of the Debtors; and (c) payments made to third-parties on behalf of personal expenses of Hoppe and Sipila.

125. CTC, Hoppe, and Sipila have a fiduciary duty to account for distributions made to the Debtors and payments made to third-parties on behalf of personal expenses of the Debtors, Hoppe, and Sipila.

126. The failure or refusal of CTC, Hoppe, and Sipila to provide this information to the Plaintiff hinders his ability to properly administer the Debtors' bankruptcy estate for the benefit of creditors.

127. Plaintiff is entitled to an accounting from CTC, Hoppe, and Sipila related to: (a) distributions made to the Debtor; (b) payments made to third-parties on behalf of personal expenses of the Debtors; and (c) payments made to third-parties on behalf of personal expenses of Hoppe and Sipila.

128. It has been necessary for Plaintiff to retain counsel to bring this action and Plaintiff is entitled to legal fees and costs.

129. Plaintiff reserves the right to supplement this Complaint to plead additional transfers and claims for relief.

### IX.   SIXTH CLAIM FOR RELIEF

**(Declaratory Judgment Against Alliance, Damiens, Robinson)**

130. Plaintiff incorporates and realleges paragraphs 1 through 129, as though fully set forth herein.

131. An actual and present controversy exists as to the bankruptcy estate's rights in alter ego claims related to CTC.

132. On June 20, 2025, the Alliance Parties initiated litigation against CTC in the Second Judicial District Court in Washoe County, Nevada, Case Number CV25-01459) (the "State Court CTC Litigation") that asserts CTC is the alter ego of G. Crawford.

. . .

-15-

133. The Alliance Parties have also initiated litigation against Sipila and Hoppe in the Second Judicial District Court in Washoe County, Nevada, Case Number CV23-01497) (the "Second State Court CTC Litigation") alleging claims for conspiracy.

134. On or about June 18, 2025, the Alliance Parties filed a motion to amend the complaint in the Second State Court CTC Litigation to include an alter ego claim against CTC.

135. Pursuant to 11 U.S.C. § 541(a)(1), a cause of action in which the debtor has a legal interest on the petition dates constitutes the property of the debtor's bankruptcy estate. *Smith v. Arthur Andersen LLP,* 421 F.3d 989, 1002 (9th Cir. 2005). *Sierra Switchboard v. Westinghouse Elec. Corp.,* 789 F. 2d 705, 707 (9th Cir. 1986); *Schnelling v. Thomas (In re Agribiotech, Inc.)*, 319 B.R. 216, 219 (D. Nev. 2004).

136. Plaintiff is the representative of a debtor's bankruptcy estate and has exclusive standing to enforce the estate's legal claims.

137. Plaintiff also has the authority to act for the benefit of the estate and may sell the cause of action, prosecute it in nonbankruptcy court, settle it, or abandon it to the debtor as of inconsequential value to the estate.

138. When a bankruptcy trustee has standing to assert a claim on behalf of the Debtors' bankruptcy estate, that standing is exclusive and divests all creditors of the power to bring the claim.

139. Where state law permits an alter ego claim to be asserted by a corporation in its own name, such a right of action is property of the estate, assertable only by the bankruptcy trustee or the debtor-in-possession, and a claim by a creditor against the debtor's affiliate based solely on an alter ego theory is therefore barred for lack of standing and under the automatic stay. *Kalb, Voorhis & Co. v. Am. Fin. Corp.,* 8 F.3d 130, 132 (2d Cir.1993).

140. The Alliance Parties are asserting claims for alter ego against CTC in the State Court CTC Litigation and the Second State Court CTC Litigation.

141. Alter ego claims are an estate asset that can only be pursued by Plaintiff.

142. The Trustee is entitled to declaratory relief and entry of judgment adjudicating the extent to which alter ego claims are property of the Debtors' bankruptcy estate pursuant to 11

-16-

U.S.C. § 541(a).

143. Upon entry of Judgment determining that all alter ego claims constitute property of the Debtors' bankruptcy estate, the Trustee shall be the sole party that can pursue these claims.

144. It has been necessary for Plaintiff to retain counsel to bring this action and Plaintiff is entitled to legal fees and costs.

145. Plaintiff reserves the right to supplement this Complaint to plead additional transfers and claims for relief.

WHEREFORE, Plaintiff prays for relief as follows:

1. With respect to the first claim for relief, Plaintiff respectfully requests that the Court avoid and recover the Transfers for the benefit of Debtor's bankruptcy estate as fraudulent transfers pursuant to 11 § 544(b) and N.R.S. Chapter 112

2. With respect to the second claim for relief, Plaintiff respectfully requests that the Court avoid and recover the Transfers for the benefit of Debtor's bankruptcy estate as fraudulent transfers pursuant to 11 U.S.C. § 548.

3. With respect to the third claim for relief, Plaintiff respectfully requests that the Court avoid and recover the Transfers for the benefit of Debtor's bankruptcy estate pursuant to 11 U.S.C. § 550.

4. With respect to the fourth claim for relief, Plaintiff respectfully requests a charging order against the Debtors' seventy-percent (70%) membership interest in CTC in the amount of $13,502,077.66 pursuant to 11 U.S.C. § 544(a)(1) and N.R.S. § 86.401(a).

5. With respect to the fifth claim for relief, Plaintiff respectfully requests that an accounting related to: (a) distributions made to the Debtor; (b) payments made to third-parties on behalf of personal expenses of the Debtors; and (c) payments made to third-parties on behalf of personal expenses of Hoppe and Sipila.

6. With respect to the sixth claim for relief, Plaintiff respectfully requests that a judgement declaring that any alter ego claims against CTC are assets of the Debtors' bankruptcy estate and can only be pursued by Plaintiff.

. . .

-17-

7. For attorneys' fees and costs of suit in an amount to be determined in this Adversary Proceeding.

8. For such other relief as this Court may deem just and proper.

Dated this 19th day of September, 2025.

**HOUMAND LAW FIRM, LTD.**

By: */s/ Jacob L. Houmand*
Jacob L. Houmand, Esq. (NV Bar No. 12781)
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone: 702/720-3370
Facsimile: 702/720-3371

*Counsel for Bradley G. Sims, Chapter 7 Trustee*

-18-